HAROLD W. DICKENS, III, ESQ. (SBN: 276082)
LAW OFFICES OF HAROLD W. DICKENS, III
3435 WILSHIRE BLVD., SUITE 2910
LOS ANGELES, CA 90010
Telephone and Fax: (877) 893-6445

Attorney for Plaintiff,
ERIK MISHIYEV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK MISHIYEV,<br><br>    Plaintiff,<br><br>vs.<br><br>ALPHABET, INC.; XXVI HOLDINGS, INC.; GOOGLE, LLC; YOUTUBE, LLC; YOUTUBE ENTERTAINMENT STUDIOS, INC. And DOES, 1 through 10, inclusive,<br><br><br><br>    Defendants. | Case No. 3:19-cv-05422-WHA<br><br>**PLAINTIFF ERIK MISHIYEV'S COMPLAINT FOR DAMAGES**<br><br>COMPLAINT FOR:<br><br>1. BREACH OF CONTRACT<br>2. INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;<br>3. INTERFERENCE WITH CONTRACTUAL RELATIONS<br>4. NEGLIGENCE;<br>5. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;<br>6. INJUNCTIVE RELIEF;<br><br>**JURY TRIAL DEMANDED** |

-1-

_____
PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

# INTRODUCTION

Plaintiff, ERIK MISHIYEV, (hereinafter "Plaintiff") alleges:

1. Plaintiff was at all times herein mentioned, originally a resident of the State of New York. Plaintiff goes by the name DJ Short-E, and operates Hot4ever LLC, established February 10, 2010, in what is now his residential location of Tampa, Florida.

2. On information and belief, Defendant YOUTUBE ENTERTAINMENT STUDIOS INC., is a Delaware corporation with its principal place of business in San Bruno, California.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive. Plaintiff therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is in some manner responsible for the injuries and damage sustained by Plaintiff, as alleged herein.

4. At all times mentioned, each Defendant, including, but not limited to Defendants DOES 1 through 10, inclusive, and each of them, were, and each was, an agent, associate and/or employee, acting with the permission, consent and/or in the aid or assistance of one or more of the other above-named Defendants and each of them at all times herein mentioned, was acting within the course and scope of his/her/their agency and/or employment of said Defendants.

5. Furthermore, because of the agency, employment and/or joint venture relationship between Defendants, each Defendant had actual and/or constructive knowledge of the acts of each of the other Cross-Defendants. Each Defendant ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of co-Defendants, and each of them, as set forth below, and/or retained the benefits of said wrongful acts.

6. In performing and failing to perform the acts alleged herein, Defendants aided and abetted the others; as each Defendant is and/or was the employee, agent, joint venturer and/or representative of the others, and was acting on their behalf, within the scope of that agency, employment and/or joint venture and with their permission and consent; as each Defendant acted both directly and indirectly through agents and employees.  As such said Defendants shall hereinafter be collectively referred to as **"Defendant."**

## JURISIDCTION

7. This Court has diversity jurisdiction over this action pursuant to 28 USC § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties hereto reside in different states.  The Plaintiff resides in the state of Florida and the Defendant is incorporated in the state of Delaware, and has its principal place of business in San Bruno California.

## FACTS

8. Plaintiff, is a well-known Journalist and DJ, known as 'Short-E', who publishes original music, DJ mixes, and celebrity interviews in videos on YOUTUBE.

9. YOUTUBE is a video-sharing site where hundreds of millions of internet users post videos daily.

10. Such videos are made available to others for viewing on individualized platforms created by the various content creators through use of the YOUTUBE website.  The content creator's videos include, but are not limited to, videos of personal life events and experiences, music videos, news reports, advertisements, commentary on differing television programs, and compilation videos of various assortments and variety.

11. Since on or about 2007, Plaintiff has developed and maintained two (2) main YOUTUBE channels, dubbed "djshortehot4eva" and "theshorteshow." With over 250,000 total subscribers from

-3-

around the world, Plaintiff managed to accumulate over 110 million views, earning him $310,000.00 over approximately a five (5) year time period. See *Exhibit A*, a true and correct copy of Plaintiff's earnings from YOUTUBE over the last five years and channel growth.

12. On or about 2007, Plaintiff entered into a written agreement with YOUTUBE, through its representative Matthew Villacarte, to begin the monetization of his videos and channels through use of a monetized AdSense publisher account, to which the following videos were designated as monetized (meaning that Plaintiff could begin earning income based on the amount of views each individual video received): http://www.youtube.com/watch?v=K5y-8-bU8p8;
http://www.youtube.com/watch?v=LXlc_6XA1VE;
http://www.youtube.com/watch?v=kDJZZCXQPR0;
http://www.youtube.com/watch?v=1nBmVV6U6DY;
http://www.youtube.com/watch?v=dSKxm6Bk8FI; http://www.youtube.com/watch?v=onlRQn0zCW8;
http://www.youtube.com/watch?v=UGgngkA2vHw; http://www.youtube.com/watch?v=z5bxmI59DV4;
http://www.youtube.com/watch?v=9Lb01gKxTzQ; http://www.youtube.com/watch?v=ngLzAoSfdP4;
http://www.youtube.com/watch?v=aFFCvWcK6Yw; http://www.youtube.com/watch?v=zsl_d_EuRFE;
http://www.youtube.com/watch?v=ZCU2h3drj08

13. The written agreement was YOUTUBE's terms and conditions which were in writing, which YOUTUBE stated governed the terms of the Plaintiff's use of YOUTUBE. See *Exhibit B*, a true and correct copy of YOUTUBE's terms and conditions that were in place and that were applicable to the parties agreement during the period of times articulated in this complaint (the **"Agreement"**).

14. Although Plaintiff does earn and has earned supplemental income through the booking of DJ events, Plaintiff's main source of income since on or about 2012, has been his earnings generated from the monetization of his YOUTUBE videos and channels through use of his AdSense publisher account.

15. On or about March 11, 2016, Plaintiff began receiving copyright claims on his highest advertisement revenue videos, which if unresponded to would leave a strike on Plaintiff's channel, with three strikes resulting in the discontinuance of Plaintiff's channel. Plaintiff ended up responding by

PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

following proper procedure and filing a 'counter-notification' challenging the claims, and ended up winning all claims asserted against him, which resulted in all of his targeted channels and videos being re-instated for monetization. See *Exhibit C*, a true and correct copy of Plaintiff's counter notification wins.

16. All parties, and most content creators on YOUTUBE, understand that it is customary for false and erroneous copyright claims to made by other users, in order to intercept advertisement revenue and/or to have legitimate content removed in an effort to stifle competition. In order to combat such customary practices, YOUTUBE has a requirement that the claimant either provide proof of a lawsuit for infringement or the alleged offending video will be re-instated, and strike(s) removed. These rules and laws are in place to vet legitimate claims from meritless claims, as well as to thwart abuse of the Digital Millennium Copyright Act ("DMCA"). See *Exhibit B*, a true and correct copy of YOUTUBE's terms and conditions (the "Agreement").

17. On or about the start of 2017, YOUTUBE congratulated Plaintiff for his success on their website and granted him a "Silver Creator Award," for his accolade of reaching 100,000 subscribers. See *Exhibit D*, a true and correct copy of Plaintiff receiving a Silver Creator Award.

18. Thereafter, although Plaintiff's channels and videos were re-instated and his subscribers were continuing to increase at a rate of about 4,000 a month, his views on each video posted remained low when compared to smaller similar channels. Plaintiff was concerned about this suspicious activity and sought confirmation numerous times from YOUTUBE that they were truly distributing his new videos to his fans and subscribers, but YOUTUBE failed to provide such confirmation, stating "They could not share this information" with him. See *Exhibit E*, a true and correct copy of Plaintiff's communications with YouTube customer service through their messaging chat.

19. As indicated above, when a person establishes a YOUTUBE channel, YOUTUBE has each person agree to YOUTUBE'S terms and conditions, which are in writing. See *Exhibit B*, a true and correct copy of YOUTUBE's terms and conditions (the "Agreement"). YOUTUBE breached Section 6(F) of the Agreement when it failed to resolve its continual technical difficulties and distribute

Plaintiff's new content. See *Exhibit F*, a true and correct copy of Plaintiff's communications with YouTube users indicating that Plaintiff's newly uploaded videos were not being distributed. YOUTUBE breached Section 6(F) when it failed to process "audiovisual content uploaded by [Plaintiff] in accordance with the YOUTUBE's Data Processing Terms. Particularly, YOUTUBE's continual technical difficulties were the result of a breach in Google's security which lead to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Customer's Personal Data on systems managed by or otherwise controlled by Google.

20. As a direct result of YOUTUBE's breach of the Agreement, although Plaintiff was growing subscribers at a rate of about 4,000 per month, when he uploaded a new video, he would only receive a few hundred views directly causing a reduction in his revenue in the amount of $125,000.00 in losses over a three (3) year period.

21. Thereafter, due to YOUTUBE's ongoing breaches and negligence in handling Plaintiff's technical issues, Plaintiff lost trust with YOUTUBE's support team and placed them on notice several times via chat messages and emails, that he would be filing a lawsuit against YOUTUBE if such conduct persisted. See *Exhibit G*, a true and correct copy of Plaintiff's email communications with YouTube customer service.

22. On December 14, 2018, YOUTUBE sent Plaintiff a notice that they were terminating his accounts and removing all his videos due to his litigation threat, though he had not violated any rules or terms of use nor the Community Guidelines. See *Exhibit H*, a true and correct copy of Plaintiff's email communications with YouTube customer service.

23. On December 15, 2018 through January 15, 2019, Plaintiff was abruptly bombarded with copyright claims like he never had been before the entire time he had been managing and growing his channels. See *Exhibit I*, a true and correct copy of Plaintiff's email inbox associated with his YouTube account.

24. Then on or about January 22, 2018, acting upon a takedown notice delivered by claimants to YOUTUBE, pursuant to the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c),

PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

YOUTUBE blocked all public access to Plaintiff's videos. YOUTUBE substituted the videos with a notice stating that "This video is no longer available due to a copyright claim." See *Exhibit J*, a true and correct copy of Plaintiff's screen shot of YOUTUBE's notice.

25. Once Plaintiff's videos were removed, he received strikes on his account. Although YOUTUBE stated they removed his channels and videos for copyright claims, the removals appeared to Plaintiff to be in retaliation for his placing them on notice that he would be filing a lawsuit. Such removals violated Section 8(b) of YOUTUBE's Agreement, which states, *inter alia*, "[u]nless the copyright claim owner files an action seeking a court order against the Content provider, member or user, the removed Content may be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, at Youtube's sole discretion." See *Exhibit K*, a true and correct copy of communications between Plaintiff and YOUTUBE's Google Support team.

26. YOUTUBE's Agreement requires that any claimants who make copyright claims demonstrate that they have filed a copyright infringement lawsuit. Should the claimant fail to provide proof within fourteen (14) days from a 'counter notification', the offending video shall be re-loaded and the strike removed. See *Exhibit L*, a true and correct copy of YOUTUBE's terms and conditions (the "Agreement").

27. Plaintiff complied with YOUTUBE's terms and conditions of use and submitted counter notifications on the following dates: Wednesday, January 23, 2019; Thursday January 24, 2019; Thursday, February 7, 2019; Friday February 8, 2019; and Friday February 22, 2019. See *Exhibit M*, true and correct copies of the notifications submitted by Plaintiff.

28. Although Plaintiff had been compliant with YOUTUBE's Agreement for counter notifications and had previously succeeded in challenging all prior claims with no litigation ever initiated against him, YOUTUBE failed to process Plaintiff's counter notifications, at first stating that such counter notifications were "ineligible," without providing a description of why Plaintiff's videos were "ineligible." See *Exhibit N*, a true and correct copy of email communications between Plaintiff and YOUTUBE.

29. After further inquiry by Plaintiff as to the root cause of Plaintiff's ineligibility to exercise his procedural rights to process counter notifications, YOUTUBE personnel retracted their statement that such videos were ineligible and instead stated that the videos counter notifications would be processed through, to which they never were processed through. See *Exhibit O*, a true and correct copy of email communications between Plaintiff and YOUTUBE.

30. YOUTUBE also failed to comply with the Agreement, which states, *inter alia*, that "…each strike expires in 90 days from the time it is issued." Ninety (90) plus business days have passed and YOUTUBE should have organically removed Plaintiff's strikes and re-instated his videos and channels according to YOUTUBE's 'Community Guidelines strike basics.' See *Exhibit P*, a true and correct copy of YOUTUBE's Community Guidelines strike basics.

31. To date, Plaintiff's strikes have not been removed, his counter claims have not been processed, and his videos and channels have been permanently removed, though no claimants presented evidence that they filed any lawsuits. Thus, evidencing that YOUTUBE did not simply remove his content because of copyright claims, but instead in retaliation for placing them on notice that he was filing a lawsuit against them.

32. YOUTUBE breached their Agreement by removing public access to Plaintiff's videos, failing to re-instate all of Plaintiff's Videos, failing to remove all strikes from his channels, and failing to re-establish all of his channels.

33. Plaintiff's YOUTUBE channels at issue herein were advertised with the AdSense publisher, which had an id# associated with the channels, such advertisements were aired during his pre-recorded tv shows in multiple cities. The AdSense id# is how Plaintiff's monetization account is identified (AdSense pub-10424255688085310), and this is no longer available as a result of his channels being removed consequently preventing him from receiving any AdSense revenue.

34. Since January 2019, Plaintiff has not earned any money from YOUTUBE. The delay of resolution that was allowed to proceed past the 14-day time limit caused him to suffer loss of earnings of $90,000 from January 2019 to July 2019. The prolonged dead video links resulted in loss of new

subscribers, views, future hits, performance bookings, and lost advertising and sponsorship revenue, all of which has caused irreparable harm. YOUTUBE's breach has directly caused Plaintiff to suffer over $720,000 in damages for loss of earnings and lost future earnings. Defendants' breach is directly causing Plaintiff to compete with a disadvantage because YOUTUBE has restricted him from creating any new YOUTUBE channels.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

35. Plaintiff adopts and restates paragraphs 1 through 34, as though fully set forth herein.

36. As referenced above, the Plaintiff entered into a service contract with Defendant by which he agreed to use Defendant's YOUTUBE platform as a repository for his video content creation with the expectation that he would be paid based on viewership of each individual posted video.

37. Plaintiff has performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of their agreement with Defendant as described above.

38. Plaintiff has requested Defendant to perform his obligations under the contract and Defendant has refused.

39. Defendant breached the contract by engaging the conduct herein alleged.

40. By engaging in the conduct outlined above and in breaching his contract with the Plaintiff, Defendant has also breached the implied covenant of good faith and fair dealing with the Plaintiff.

41. As a direct result of Defendant's conduct, Plaintiff was harmed and continues to be harmed and the breach of contract was a substantial factor causing Plaintiff's harm.

42. As a result, thereof, Plaintiff is informed and believes, and on such basis alleges that he is owed an amount according to proof at trial, but at least $720,000.00.

WHEREFORE Plaintiff prays for the relief hereinafter set forth.

PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION
### (INTERFERENCE WITH CONTRACTUAL RELATIONS)

43. Plaintiff adopts and restates paragraphs 1 through 42, as though fully set forth herein.

44. Defendant knew that Plaintiff had many subscribers which as a result thereof, the Plaintiff was making money from said subscribers. Defendant interfered with Plaintiff's contractual relationships with said subscribers by doing all of the acts and omissions alleged above.

45. As a proximate result of the above described acts and omissions of the Defendant, Plaintiff's contractual relationships with customers have broken and/or been damaged.

46. As a further proximate result of the acts and omissions of Defendant as herein alleged, Plaintiff is informed and believes and on such basis alleges that he has lost profits and/or other compensation in an amount not fully known by him, will continue to lose profits in the future, the full extent to which is not currently known to Plaintiff. Plaintiff requests leave to amend when said amount is ascertained.

47. The aforementioned conduct of Defendant was intentional on the part of Defendant, thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff rights, so as to justify an award of exemplary and punitive damages.

48. Defendant unless restrained, will disrupt other business relationships between Plaintiff and other potential customers to Plaintiff great irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

WHEREFORE Plaintiff prays for the relief hereinafter set forth

___

## THIRD CAUSE OF ACTION
### (INTERFERENCE WITH ECONOMIC ADVANTAGE)

49. Plaintiff adopts and restates paragraphs 1 through 48, as though fully set forth herein.

50. Defendant interfered with Plaintiff's prospective clients by engaging in the conduct attributed to the defendant above and omissions alleged above.

51. As a proximate result of the Defendant's conduct described above, Plaintiff's contractual relationships with potential customers have been broken and/or damaged.

52. As a further proximate result of the acts and omissions of Defendant as herein alleged, Plaintiff is informed and believes and on such basis alleges that he has lost profits and/or other compensation in an amount not fully known by him, will continue to lose profits in the future, the full extent to which is not currently known to Plaintiff, but is at least believed to be $720,000.  Plaintiff requests leave to amend when said amount is ascertained.

53. The aforementioned conduct of Defendant was intentional on the part of Defendant, thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff rights, so as to justify an award of exemplary and punitive damages.

54. Defendant unless restrained, will disrupt other business relationships between Plaintiff and other potential customers to Plaintiff great irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

## FOURTH CAUSE OF ACTION
### (NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE)

55. Plaintiff adopts and restates paragraphs 1 through 54, as though fully set forth herein.

56. Defendant had a duty to refrain from conduct that would cause harm to Plaintiff. Defendant breached that duty when negligently interfered with Plaintiff's prospective clients by doing all of the acts and omissions alleged above.

57. As a proximate result of the above described acts and omissions of the Defendant, Plaintiff's contractual relationships with potential customers have been broken and/or damaged.

58. As a further proximate result of the acts and omissions of Defendant as herein alleged, Plaintiff is informed and believes and on such basis alleges that he has lost profits and/or other compensation in an amount not fully known by him, will continue to lose profits in the future, the full extent to which is not currently known to Plaintiff, but the damaged is believed to be at least $720,000. Plaintiff requests leave to amend when said amount is ascertained.

WHEREFORE Plaintiff prays for the relief hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE)

59. Plaintiff incorporates herein by reference Paragraphs 1 through 58, above, as if set forth fully herein.

60. Defendant owed a duty to Plaintiff to exercise reasonable care to prevent causing harm to the Plaintiff and knew or should have known with reasonable certainty that Plaintiff would suffer damages if Defendant engaged in the conduct attributed to defendant herein.

61. Defendant breached it duty by engaging in the conduct described above.

-12-

_____
PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

62. As a direct and legal result of Defendant's negligence, Plaintiff has, and will incur, damages as described above.

WHEREFORE, Plaintiff prays for judgment as hereafter set forth.

### SIXTH CAUSE OF ACTION
### (INJUCTIVE RELIEF)

63. Plaintiff adopts and restates paragraphs 1 through 62, as though fully set forth herein.

64. Defendant is refusing to allow the plaintiff to create new channels and is engaging in other conduct that is preventing the Plaintiff from earning profits

65. In order to stop the Defendant damaging the Plaintiff's business relations, a restraining order and preliminary injunction should issue, preventing the Defendants and their agents, servants, assigns and all those in concert with them from banning Plaintiff from the full use of the internet and YOUTUBE's services.

WHEREFORE Plaintiff prays for the relief hereinafter set forth

### PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

On the FIRST COUNT:

1. General damages according to proof, but in the amount of at least $720,000.00;

2. Special damages according to proof;

On the SECOND thru FIFTH COUNTS:

3. General damages according to proof, but in the amount of at least $$720,000.00;

4. Special damages according to proof;

PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES

5. For punitive damages in an amount appropriate to punish Defendant and deter defendant from engaging in similar misconduct;

On the SIXTH COUNT:

6. For an order requiring Defendant to show cause, if any, why both a preliminary and permanent injunction should not issue enjoining Defendant and its agents and all persons, acting under, in concert with defendant, from restricting Plaintiff's use of YOUTUBE in any manner, AND

7. For a preliminary and permanent injunction enjoining Defendants agents and all persons, acting under, in concert with defendant, from restricting Plaintiff's use of YOUTUBE in any manner.

On ALL COUNTS:

8. For the cost of suit incurred herein;

9. For such other and further relief as the Court may deem proper.

Dated: February 2, 2020                            LAW OFFICES OF HAROLD W. DICKENS, III


                                      By:   HAROLD W. DICKENS, III, ESQ.
                                            _____
                                            LAW OFFICES OF HAROLD W. DICKENS, III
                                            Attorneys for Plaintiff, ERIK MISHIYEV

PLAINTIFF ERIK MISHIYEV'S FIRST AMENDED COMPLAINT FOR DAMAGES