1   DAVID H. KRAMER, State Bar No. 168452
    Email:  dkramer@wsgr.com
2   DALE R. BISH, State Bar No. 235390
    Email:  dbish@wsgr.com
3   RYAN S. WOLF, State Bar No. 319353
    Email:  rwolf@wsgr.com
4   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
5   650 Page Mill Road
    Palo Alto, CA  94304-1050
6   Telephone:     (650) 493-9300
    Facsimile:      (650) 565-5100
7
    *Attorneys for Defendant YouTube Entertainment Studios*
8   *Inc.*

9                   UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
10                    SAN FRANCISCO DIVISION

11  ERIK MISHIYEV,                    )   CASE NO.:  3:19-cv-05422-WHA
                                      )
12              Plaintiff,            )
                                      )   Hon. William Alsup
13         v.                         )
                                      )   **DEFENDANT YOUTUBE**
14  YOUTUBE ENTERTAINMENT STUDIOS     )   **ENTERTAINMENT STUDIOS**
    INC., et al.,                     )   **INC.'S NOTICE OF MOTION AND**
15                                    )   **MOTION TO DISMISS AMENDED**
                Defendants.           )   **COMPLAINT; MEMORANDUM OF**
16                                    )   **POINTS AND AUTHORITIES**
                                      )
17                                    )   Date:       March 12, 2020
                                      )   Time:       8:00 A.M.
18  _____  )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................... 1

STATEMENT OF ISSUES .......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

    INTRODUCTION ................................................................................................ 1

    BACKGROUND .................................................................................................. 3

        I.     The YouTube Terms of Service Agreement ............................... 3

        II.    Plaintiff's Allegations. ................................................................ 4

    ARGUMENT ........................................................................................................ 5

        I.     PLAINTIFF'S CLAIMS FAIL BECAUSE THE PARTIES' CONTRACT GRANTS YOUTUBE THE RIGHT TO DISCONTINUE ANY OF ITS SERVICES AT ANY TIME .................. 6

        II.    PLAINTIFF FAILS TO STATE REQUIRED ELEMENTS OF HIS CLAIMS ................................................................................ 8

               A.    The Breach of Contract Claim Fails ................................ 8

               B.    The Interference with Contractual Relations Claim Fails ............ 10

               C.    The Interference with Economic Advantage Claims Fail ............ 11

               D.    The Negligence Claim Fails ............................................ 12

               E.    The Amended Complaint Inexplicably Adds Defendants And Lumps Them Together ...................................... 13

               F.    Plaintiff's Alleged Damages Are Barred by the Limitation of Liability Provision in the Agreement ............................ 15

        III.   PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 OF THE CDA ................................................................................... 16

    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
  47 Cal. App. 4th 464 (1996)..................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................5, 6, 9

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009)..........................................................................16, 17

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003)..........................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................6, 9

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
  206 F.3d 980 (10th Cir. 2000)..........................................................................17

*Bevis v. Terrace View Partners, LP*,
  33 Cal. App. 5th 230 (2019)............................................................................6, 7

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal.4th 342 (1992).......................................................................................7

*Clark v. Countrywide Home Loans, Inc.*,
  732 F. Supp. 2d 1038 (E.D. Cal. 2010)................................................................12

*Damabeh v. 7-Eleven, Inc.*,
  No. 5:12-CV-01739 LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ...........................11

*Darnaa, LLC v. Google Inc*,
  236 F.Supp.3d 1116 (N.D. Cal. Feb. 21, 2017) ....................................................15

*Darnaa, LLC v. Google, Inc.*,
  No. 15-cv-03221-RMW, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015)..............................15

*Dryden v. Tri-Valley Growers*,
  65 Cal. App. 3d 990 (1977)............................................................................10

*Ebeid v. Facebook, Inc.*,
  No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ...............................17

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996)...........................................................................6

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) (en banc)..............................................................16, 17

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal. 4th 85 (1995)...................................................................................12

*Gavra v. Google Inc.*,
        No. 5:12-CV-06547 PSG, 2013 WL 3788241 (N.D. Cal. July 17, 2013) ..........................16

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
        926 F. Supp. 948 (S.D. Cal. 1996) ....................................................................................14

*Holomaxx Techs. Corp. v. Microsoft Corp.*,
        No. 10-cv-04924 JF (HRL), 2011 WL 3740813 (N.D. Cal. Aug. 23, 2011) ......................17

*Ilkhchooyi v. Best*,
        37 Cal. App. 4th 395 (1995)..................................................................................................7

*Ivanoff v. Bank of America, N.A.*,
        9 Cal. App. 5th 719 (2017)..................................................................................................13

*Karkanen v. California*,
        No. 17-cv-06967-YGR, 2018 WL 3820916 (N.D. Cal. Aug. 10, 2018)..............................14

*Klayman v. Zuckerberg*,
        753 F.3d 1354 (D.C. Cir. 2014) .........................................................................................17

*Ladd v. County of San Mateo*,
        12 Cal.4th 913 (1996)..........................................................................................................12

*Lancaster v. Alphabet Inc.*,
        No. 15-cv-05299 HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016)....................16, 17, 18

*Levitt v. Yelp! Inc.*,
        No. 10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011),
        *aff'd*, 765 F.3d 1123 (9th Cir. 2014) ..................................................................................17

*Lewis v. YouTube. Lewis*,
        244 Cal. App. 4th 118 (2015), *review denied* (Apr. 13, 2016)............................................15

*Mehr v. Féderation Internationale De Football Ass'n*,
        115 F. Supp. 3d 1035 (N.D. Cal. 2015) ............................................................................13

*Merritt v. Countrywide Fin. Corp.*,
        No. 09-cv-1179-BLF, 2016 WL 6573989 (N.D. Cal. June 29, 2016) .................................14

*Nat'l Med. Transp. Network v. Deloitte & Touche*,
        62 Cal. App. 4th 412 (1998)..........................................................................................11, 12

*Oasis W. Realty, LLC v. Goldman*,
        51 Cal.4th 811 (2011)............................................................................................................8

*Quelimane Co. v. Stewart Title Guaranty Co.*,
        19 Cal. 4th 26 (1998)...........................................................................................................12

*Roth v. Rhodes*,
        25 Cal. App. 4th 530 (1994) .........................................................................................12, 13

*S. Cal. Gas Leak Cases*,
        18 Cal. App. 5th 581, 587 (2017) ..................................................................................12, 13

*Santos v. Taylor*,
No. CV 17-07260 FMO (AFM),
2017 WL 5891680 (C.D. Cal. Nov. 28, 2017) ...................................................................14

*Schuman v. State of Cal.*,
584 F.2d 868 (9th Cir. 1978)...........................................................................................14

*Sikhs for Justice "SFJ", Inc. v. Facebook Inc.*,
144 F.Supp.3d 1088 (N.D. Cal. 2015),
*aff'd*, 697 F.App'x 526 (9th Cir. 2017) ....................................................................16, 17

*Smith v. Facebook, Inc.*, No. 16-01282 EJD,
262 F. Supp. 3d 943 (N.D Cal. May 9, 2017),
*aff'd* 745 F.App'x 8 (9th Cir. 2018) ..................................................................................8

*Song Fi Inc. v. Google, Inc.*,
108 F. Supp. 3d 876, 880 (N.D. Cal. 2015) .......................................................................7

*Sweet v. Google Inc.*,
No. 17-cv-03953-EMC, 2018 WL 1184777, at *1 (N.D. Cal. Mar. 7, 2018).......................7

*Turner Entm't Networks, Inc. v. Spurlock*,
No. CV 18-2490-R, 2018 WL 8755497 (C.D. Cal. June 21, 2018)...................................14

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015)........................................................................10, 11

*Valenzuela v. ADT Sec. Servs.*,
820 F. Supp. 2d 1061 (C.D. Cal. 2010) ...........................................................................12

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
42 Cal. App. 4th 507 (1996)..............................................................................................11

*Yang v. Sun Tr. Mortg., Inc.*,
No. 1:10-CV-01541 AWI SKO,
2011 WL 3875520 (E.D. Cal. Aug. 31, 2011) ................................................................7, 8

*Yu v. Design Learned, Inc.*,
No. 15-cv-05345-LB, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016)................................14

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997)............................................................................................16

**STATUTES**

47 U.S.C. § 230 .........................................................................................................*Passim*

**RULES**

Fed. R. Civ. P. 8(a)(2) .....................................................................................................14

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1, 5

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on March 12, 2020, at 8 o'clock in the morning, before the

4

Honorable Judge William Alsup of the United States District Court for the Northern District of

5

California, Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

6

Defendant YouTube Entertainment Studios Inc. ("Defendant" or "YouTube") will, and hereby

7

does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order

8

dismissing Plaintiff Erik Mishiyev's Amended Complaint for Damages (the "Amended

9

Complaint") with prejudice.

10

The motion is based upon this Notice of Motion and Motion; the Memorandum of Points

11

and Authorities in support thereof; the Proposed Order filed concurrently herewith; the

12

pleadings, records, and papers on file in this action; oral argument of counsel; and any other

13

matters properly before the Court.

14

**STATEMENT OF ISSUES**

15

1.      Should Plaintiff's claims be dismissed with prejudice under Fed. R. Civ. P.

16

12(b)(6) because they are precluded by the parties' agreement, which expressly permits

17

YouTube to take the actions about which Plaintiff complains?

18

2.      Should Plaintiff's claims be dismissed with prejudice under Fed. R. Civ. P.

19

12(b)(6) because Plaintiff has not pled and cannot plead required elements?

20

3.      Should Plaintiff's claims be dismissed with prejudice under Fed. R. Civ. P.

21

12(b)(6) because they are barred by Section 230 of the Communications Decency Act?

22

**MEMORANDUM OF POINTS AND AUTHORITIES**

23

**INTRODUCTION**

24

Plaintiff, Erik Mishiyev, uploaded videos on YouTube's website that drew countless

25

complaints of copyright infringement from content owners.  When YouTube removed the

26

disputed content and ultimately terminated Plaintiff's account, he sued YouTube claiming those

27

actions caused him harm.  But Plaintiff's claims, set out in an Amended Complaint [ECF. No. 32

28

("Am. Comp.")] fail as a matter of law for multiple reasons.

First, the Terms of Service Agreement that, according to Plaintiff, govern his use of YouTube grants YouTube editorial control over content posted to the service. The agreement states, for example, that where YouTube believes content violates its rules, "YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service." (Compl. Ex. B ¶ 7.B); *see also id.* at ¶ 4.J (YouTube "reserves the right to discontinue any aspect of the Service at any time.").[1] Further, upon receiving notice of copyright (or other intellectual property) disputes, YouTube "reserves the right to remove Content without prior notice." (Compl. Ex. B ¶ 6.G). YouTube has no obligation to ever restore that material to its service, even where a user protests, and the agreement expressly highlights its discretion not to do so. *Id.* ¶ 8.B. Here, YouTube removed content that Plaintiff posted that was alleged to infringe copyrights, and chose not to restore it. That is precisely what the contract envisions and authorizes. Plaintiff cannot assert claims based on conduct that was expressly authorized by the contract to which he agreed. On this ground, other courts have rejected similar claims against YouTube in the past. This Court should do the same.

Second, Plaintiff has failed to plead facts sufficient to support the elements of the claims he asserts. Plaintiff has brought a breach of contract claim but has identified no breach of an agreement; he has brought tortious interference claims but has specified no third-party relationships with which Defendant knowingly interfered; he has brought a negligence claim but has not alleged facts demonstrating that Defendant owed him any duty beyond those in the parties' contract. Further, under all the theories he asserts, Plaintiff's claims for damages are foreclosed by the limitation of liability provision found in the contract he seeks to enforce.

Finally, Plaintiff's claims are barred by federal law. Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, immunizes YouTube for actions it takes in the role of

---

[1] Although Plaintiff's Amended Complaint contains references to exhibits throughout, none of the referenced exhibits are attached to it. Because the allegations in the Amended Complaint are identical to those in the original complaint, which did include the referenced attachments, Defendant refers to the attachments attached to the original complaint using the abbreviation "Compl. Ex.___"

publisher of content created by others.  Here, YouTube's decision to bar Plaintiff and his videos from its service is a classic example of the editorial discretion safeguarded by Section 230.

For all these reasons, the Court should dismiss Plaintiff's case with prejudice.

## BACKGROUND

YouTube operates the popular video-sharing website of the same name through which users can post and view content.  Am. Compl. ¶ 9.  With limited exceptions, the YouTube service is free; users are not charged to upload or view videos.  Moreover, some YouTube users can make money from their videos through YouTube's AdSense program under which YouTube may display advertising in connection with a video and share the revenue from that advertising with the user who uploaded it.  Am. Compl. ¶¶ 11-12.

### I.    The YouTube Terms of Service Agreement

According to the Amended Complaint, the relationship between YouTube and its users, including Plaintiff, is governed by YouTube's Terms of Service Agreement (the "Agreement").  Am. Compl. ¶¶ 13, 19; Compl. Ex. B.  The Agreement vests YouTube with significant control over the operation of its service:  YouTube "may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service" and "reserves the right to remove Content without prior notice."  Compl. Ex. B ¶¶ 7.B, 6.G.[2]

---

[2] The full text of Section 7.B reads:

> YouTube reserves the right to decide whether Content violates these Terms of
> Service for reasons other than copyright infringement, such as, but not limited to,
> pornography, obscenity, or excessive length.  YouTube may at any time, without
> prior notice and in its sole discretion, remove such Content and/or terminate a
> user's account for submitting such material in violation of these Terms of Service.

Section 6.G reads:

> YouTube does not endorse any Content submitted to the Service by any user or
> other licensor, or any opinion, recommendation, or advice expressed therein, and
> YouTube expressly disclaims any and all liability in connection with Content.
> YouTube does not permit copyright infringing activities and infringement of
> intellectual property rights on the Service, and YouTube will remove all Content if
> properly notified that such Content infringes on another's intellectual property
> rights.  YouTube reserves the right to remove Content without prior notice.

Compl. Ex. B.

YouTube's right to remove content from its service explicitly extends to material alleged to infringe third-party copyrights. *Id.* Under the Agreement, a copyright owner that believes that content on YouTube infringes its copyright may submit a notification to YouTube to have the allegedly infringing content removed. *Id.* ¶ 8.A. If the uploader believes that the content did not infringe, he can file a "counter-notice" responding to the allegations. *Id.* ¶ 8.B. The Agreement unambiguously grants YouTube the power to decide whether and how to respond to such a counter-notice:

> YouTube may send a copy of the counter-notice to the original complaining party informing that person that it *may* replace the removed Content or cease disabling it in 10 business days. Unless the copyright owner files an action seeking a court order against the Content provider, member or user, the removed Content *may* be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, *at YouTube's sole discretion*.

*Id.* (emphasis added). Thus, while YouTube may choose to replace disputed content in response to a user's counter-notice, the Agreement expressly recognizes that YouTube may choose not to do so.

Additionally, the Agreement contains a broad limitation of liability provision that limits YouTube's liability for damages resulting from, among other things, "any interruption or cessation of transmission to or from our services" and "any errors or omissions in any content." Compl. Ex. B ¶ 10.

## II.   Plaintiff's Allegations

Plaintiff describes himself as a journalist and DJ who goes by the moniker "Short-E." Am. Compl. ¶ 8. Plaintiff uploads videos, DJ mixes, and celebrity interviews on his YouTube channels, "djshortehot4eva" and "theshorteshow". *Id.* ¶¶ 8, 11. Plaintiff claims that through YouTube's AdSense program, he earned over $300,000 from advertising on his videos over a five-year period from YouTube. Am. Compl. ¶¶ 11-12, Compl. Ex. A.

The problem for Plaintiff is that numerous third parties claimed his videos infringed their copyrights. In December 2018, YouTube received roughly two dozen notices of copyright infringement directed to Plaintiff's videos, which bore titles indicating they were mixes of other songs. Am. Compl. ¶ 23, Comp. Ex. I (e.g., "REGGAE MEGA MIX #02"). YouTube removed

the allegedly infringing videos from its service.  Am. Compl. ¶¶ 24-25.  In response, Plaintiff

provided counter-notices in which he contended the mixes did not infringe.  *Id.* ¶ 27.  Exercising

its rights under the Agreement, YouTube chose not to restore Plaintiff's videos to YouTube's

service.  *Id.* ¶¶ 24-25, 28-32.  And in May 2019, YouTube informed Plaintiff that it was

terminating his use of the YouTube service due to the allegations of serial copyright

infringement it had received from third parties.  Compl. Ex. H.

On August 28, 2019, Plaintiff filed this suit against YouTube.  The Amended Complaint

alleges that after failing to resolve unspecified technical difficulties with its site (¶ 19), YouTube

wrongfully removed Plaintiff's content and terminated his account (¶ 32).  His complaint asserted

claims for (1) breach of contract; (2) interference with contractual relations; (3) interference with

economic advantage; (4) negligent interference with economic advantage; (5) negligence; and (6)

injunctive relief.

After fits and starts and the withdrawal of his counsel, Plaintiff served the original

complaint on January 3, 2020.[3]  On February 2, 2020, Plaintiff's new counsel filed an Amended

Complaint (ECF No. 32).  The Amended Complaint is identical to the original, except that it adds

several new corporate entities—YouTube, LLC, Google LLC, XXVI Holdings Inc., and Alphabet

Inc.—as defendants in the case caption.  Absent, however, are any allegations (substantive or

otherwise) that provide a basis for naming these additional entities as defendants.  The newly-

added defendants are not even mentioned by name in the body of the Amended Complaint and

have not been served with it.

## ARGUMENT

A complaint should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

---

[3]  Plaintiff's original counsel filed a motion to withdraw as attorney on October 16, 2019 [ECF No. 8] without explanation and the Court granted the motion on October 18, 2019 [ECF No. 11].  Plaintiff then failed to appear at the initial case management conference.  [ECF No. 17].  On December 6, 2019, the Court ordered Plaintiff to show cause why "this case should not be dismissed for lack of prosecution or other sanction for failing to attend the duly noticed case management conference."  *Id.*  That OSC hearing was later continued to March 12, 2020 and remains on calendar.

1   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Factual allegations must

2   be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

3   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4   statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Accordingly, while the Court accepts as true

5   all material allegations in the complaint, it need not accept the truth of conclusory allegations or

6   unwarranted inferences, nor should it accept legal conclusions as true merely because they are

7   cast in the form of factual allegations.  *Id.* at 678-79; *accord Epstein v. Wash. Energy Co.*, 83

8   F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences

9   are insufficient to defeat a motion to dismiss for failure to state a claim.").

10  **I.   PLAINTIFF'S CLAIMS FAIL BECAUSE THE PARTIES' CONTRACT GRANTS
11       YOUTUBE THE RIGHT TO DISCONTINUE ANY OF ITS SERVICES AT ANY
         TIME**

12          Plaintiff's claims rest almost entirely on allegations that YouTube stopped distributing

13  and displaying Plaintiff's videos and channels through the YouTube service.  These claims fail

14  because YouTube's actions were expressly authorized by the Agreement.  The Agreement

15  expressly, repeatedly, and unambiguously provides that YouTube has the right to control the

16  content on its site.  *See, e.g.,* Compl. Ex. B ¶¶ 6.G ("YouTube reserves the right to remove

17  Content without prior notice"); 7.B ("YouTube may at any time, without prior notice and in its

18  sole discretion, remove such Content and/or terminate a user's account for submitting such

19  material in violation of these Terms of Service."); *see also id.* ¶ 4.J ("YouTube reserves the right

20  to discontinue any aspect of the Service at any time.").  And while Plaintiff would have the Court

21  believe YouTube must restore content after receipt of a counter notice (*see* Compl. ¶¶ 26, 32),

22  the Agreement says the opposite.  Compl. Ex. B ¶ 8.B (vesting YouTube with "sole discretion"

23  as to whether or not to restore Content after receipt of a counter-notice). YouTube exercised its

24  rights under these provisions in removing Plaintiff's content and ultimately his account following

25  receipt of numerous copyright infringement allegations against him.

26          Conduct authorized by an agreement cannot give rise to a claim for breach of that

27  agreement.  *Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 253 (2019) ("[I]f

28  defendants were given the right to do what they did by the express provisions of the contract

there can be no breach."); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing what is expressly permitted by an agreement.").[4]   Nor can the exercise of an express contractual right generally give rise to claims in tort, absent some separate, fiduciary relationship between the parties.  *Bevis*, 33 Cal. App. 5th at 252, 258 (finding express contract terms barred negligence claims); *Ilkhchooyi v. Best*, 37 Cal. App. 4th 395, 411-12 (1995) (finding express contract terms barred claims for tortious interference); *Yang v. Sun Tr. Mortg., Inc.*, No. 1:10-CV-01541 AWI SKO, 2011 WL 3875520, at \*5-9 (E.D. Cal. Aug. 31, 2011) (finding no claim under the UCL could stand where parties' agreement expressly allowed for the actions taken by defendant).

Another court in this district applied this principle in a case very similar to this one to bar both contract and tort claims arising under the YouTube Terms of Service Agreement.  In *Song Fi Inc. v. Google, Inc.*, YouTube removed from its service a music video that plaintiffs created and uploaded.  108 F. Supp. 3d 876, 880 (N.D. Cal. 2015).  The plaintiffs brought suit, arguing that YouTube's removal breached the same agreement at issue here.  The court dismissed the claims holding that the "Terms of Service unambiguously reserve to YouTube the right to determine whether 'Content violates these Terms of Service' and, 'at any time, without prior notice and in its sole discretion, remove such Content" and that they also allow "YouTube to 'discontinue any aspect of the Service at any time.'"  *Id.* at 885.  As the Court recognized, the plaintiffs could not "state a claim for breach of the Terms of Service in removing the video, because conduct authorized by a contract cannot give rise to a claim for breach of the agreement."  *Id.*

*Sweet v. Google Inc.*, another case in this district, is similar.  There, the plaintiffs operated a YouTube channel that made them money under YouTube's AdSense program.  No. 17-cv-03953-EMC, 2018 WL 1184777, at \*1 (N.D. Cal. Mar. 7, 2018). The governing

---

[4] Plaintiff's claims are governed by California law pursuant to the choice-of-law clause contained in the YouTube Terms of Service Agreement.  Compl. Ex. B ¶ 14.

agreement for that program provided that YouTube "is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service." *Id.* at *4. When YouTube ceased to display advertising in connection with the plaintiffs' videos, they sued, charging YouTube with breach of contract and tortious interference. The court held that the contractual language gave YouTube complete discretion over whether and when to run advertisements. *Id.* at *5-10. It thus dismissed all of the plaintiffs' claims—both contract and tort—with prejudice reasoning that the provision explicitly authorized the conduct about which plaintiffs complained. *Id.; see also Smith v. Facebook, Inc.*, No. 16-01282 EJD, 262 F. Supp. 3d 943, 953-56 (N.D Cal. May 9, 2017), *aff'd* 745 F.App'x 8 (9th Cir. 2018) (contract and tort claims were barred where based on conduct expressly allowed by Facebook's Terms of Use).

Like the agreements at issue in *Song Fi* and *Sweet,* the Agreement that Plaintiff alleges governs the parties' relationship granted YouTube the right to discontinue its service to Plaintiff and remove Plaintiff's content as it saw fit. Am. Compl. ¶ 13; Compl. Ex. B ¶¶ 4.J, 6.G, 7.B. Plaintiff cannot now complain that YouTube exercised a right expressly granted it under the parties' Agreement, and cannot state claims based upon that exercise.

## II.   PLAINTIFF FAILS TO STATE REQUIRED ELEMENTS OF HIS CLAIMS

Even without regard to the express authorization for YouTube's actions under the parties' Agreement, Plaintiff's allegations do not state a cognizable claim.

### A.   The Breach of Contract Claim Fails

In California, a breach of contract claim requires: "(1) the existence of [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Plaintiff fails to allege any breach of the Agreement by YouTube.

The Amended Complaint makes a general reference to "technical difficulties" that Plaintiff encountered when using the YouTube service, claiming they constitute a breach of the Agreement. *See* Am. Compl. ¶¶ 19, 23-31. Plaintiff does not actually describe what these supposed difficulties were. He simply complains that his videos did not get the attention that he

1   anticipated.  *Id.*  More importantly, Plaintiff does not cite any provision of the Agreement

2   obligating YouTube to offer a service free of "technical difficulties" or one that guarantees a user

3   any level of attention.  *See generally* Compl. Ex. B.  There is no such provision.  To the contrary,

4   the Agreement contains an explicit disclaimer of express or implied warranties.  Compl. Ex. B ¶

5   9.

6        In the absence of any actual provision on point, and in the face of an express warranty

7   disclaimer, Plaintiff invokes language in Paragraph 6.F directed to data protection.  Am. Compl.

8   ¶ 19, Compl. Ex. B ¶ 6.F. That section states:

9        YouTube will process any audio or audiovisual content uploaded by you to the
         Service in accordance with the YouTube Data Processing Terms
10       (www.youtube.com/t/terms_dataprocessing), except in cases where you uploaded
         such content for personal purposes or household activities.

11

12  Compl. Ex. B ¶ 6.F.  This provision does not help Plaintiff.  It merely describes *how* YouTube

13  will process and protect customers' personal data (i.e., pursuant to YouTube Data Processing

14  Terms).[5]  It says nothing about the technical means by which YouTube will display user videos,

15  or guarantee any particular audience level.  In other words, the provision does not support

16  Plaintiff's breach claim based on supposed "technical difficulties."

17       The primary focus of Plaintiff's claim of breach is on YouTube's removal of his videos

18  from the service following dozens of notices of alleged copyright infringement.  Plaintiff claims

19  that YouTube was obligated under Section 8.B of the Agreement to restore those videos to its

20  service after he provided YouTube with counter-notices.  Am. Compl. ¶¶ 23-31.  But Plaintiff

21  ignores (or worse, deliberately misstates) the language of that contractual provision. Section 8.B

22  states:

23  _____

24  [5] YouTube's Data Processing Terms speak to the data security measures that the parties will each
    take and describe a customer's right to delete personal data. *See, e.g.*, Compl. Ex. B, YouTube
25  Data Processing Terms ¶¶ 6-7.  Plaintiff offers an entirely conclusory allegation that there was
    some "breach in Google's security which lead to the accidental or unlawful destruction, loss,
26  alteration, unauthorized disclosure of, or access to, Customer's Personal Data or systems
    managed by or otherwise controlled by Google."  Am. Compl. ¶ 19. The allegation is
27  impenetrable. It has nothing to do with anything else alleged in the complaint.  There are
    certainly no facts pled to support a claim of a data breach, let alone one of consequence to
28  Plaintiff.  The conclusory allegation is properly ignored under *Twombly* and *Iqbal*.  *Iqbal*, 556
    U.S. at 678-79.

If a counter-notice is received by the Copyright Agent, YouTube *may* send a copy of the counter-notice to the original complaining party informing that person that it *may* replace the removed Content or cease disabling it in 10 business days. Unless the copyright owner files an action seeking a court order against the Content provider, member or user, the removed Content *may* be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, *at YouTube's sole discretion*.

Compl. Ex. B ¶ 8.B (emphasis added). The provision clearly gives YouTube discretion on whether to restore Content following a counter-notice. Nothing in this section mandates restoration. *Cf.* Am. Compl. ¶ 26 (misrepresenting the Agreement as stating that following a counter-notice "the offending video *shall* be re-loaded and the strike removed") (emphasis added).

YouTube did not—and indeed could not—breach the Agreement by declining to restore Plaintiff's videos after they were removed based on allegations of copyright infringement. Because Plaintiff has failed to identify any breach of the Agreement by YouTube, his breach of contract claim against it must be dismissed.

## B. The Interference with Contractual Relations Claim Fails

A plaintiff alleging an interference with contract claim must plead facts establishing the following elements: (1) a valid and existing contract with a third-party; (2) defendant's knowledge of this contract; (3) defendant's commission of intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the relationship; and (5) resulting damages. *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015); *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 995 (1977).

Plaintiff's interference with contract claim fails because he does not allege the existence of a contract with any third-party. *UMG Recordings,* 117 F. Supp. 3d at 1115 (dismissing plaintiff's tortious interference claim because the claim "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties."). Plaintiff's claim hinges instead upon the unadorned contention that "[he] had many subscribers" from whom he was "making money." Am. Compl. ¶ 44.

But nowhere in the Amended Complaint does Plaintiff provide facts showing that he had contractual relationships with third parties that YouTube could have interfered with.  Because he failed to allege facts showing the existence of any third-party contract, Plaintiff also necessarily failed to allege that YouTube had knowledge of such a contract.  Also not alleged is the intentional interference by YouTube in the unidentified, supposed contractual relationship.  *See UMG Recordings,* 117 F. Supp. 3d at 1115.  Each of these shortcomings by itself requires dismissal of Plaintiff's interference with contractual relations claim.

### C.     The Interference with Economic Advantage Claims Fail

Plaintiff's similar interference with prospective economic advantage claims fare no better.  To state these claims, a plaintiff must plead facts showing: (1) a specific economic relationship between the plaintiff and a third-party, with the probability of future economic benefit to plaintiff; and (2) the defendant's knowledge of that particular relationship. *UMG Recordings,* 117 F. Supp. 3d at 1116–18 (dismissing both intentional and negligent interference with economic advantage claims because "Plaintiff ha[d] not identified the particular relationships or opportunities with which Defendant [was] alleged to have interfered."). Additionally, a plaintiff must plead facts showing that any interference in the relationship by the defendant was independently wrongful. *Nat'l Med. Transp. Network v. Deloitte & Touche*, 62 Cal. App. 4th 412, 439 (1998).

Plaintiff does not allege any specific, third-party economic relationship with which YouTube supposedly interfered.  Rather, Plaintiff claims only to have lost out on "potential customers" (Am. Compl. ¶¶ 51, 57), none of whom Plaintiff identifies.  As a matter of law, allegations that Plaintiff lost unidentified "prospective" clients and customers, without more, do not state a claim for interference with economic advantage.  *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (plaintiff must allege a specific, identifiable third-party so that the court can "estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered."); *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-01739 LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("[I]t is essential that the [claimant] allege facts showing that

1   [d]efendant interfered with [a] relationship with a particular individual."); *Roth v. Rhodes*, 25

2   Cal. App. 4th 530, 546 (1994) (dismissing tortious interference claim based on alleged disruption

3   with unidentified group of future customers).

4        Plaintiff also failed to satisfy the requirement that he plead YouTube engaged in

5   independently wrongful conduct.  At a minimum, Plaintiff must specify YouTube's alleged

6   interference involved violation of "a statute or other regulation or a recognized rule of common

7   law, or perhaps an established standard of a trade or profession."  *Arntz Contracting Co. v. St.*

8   *Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 477 (1996); *Nat'l Med. Transp. Network*, 62

9   Cal. App. 4th at 439.  There is nothing like that pleaded or present here.

10        **D.**     **The Negligence Claim Fails**

11        Plaintiff's pro forma allegations of negligence do not state a cause of action for

12   negligence.  The elements of a negligence claim are: "(a) a legal duty to use due care; (b) a

13   breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting

14   injury."  *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996) (emphasis omitted).

15        Plaintiff alleges no facts at all that are particular to his claim of negligence.  It appears his

16   intent is simply to incorporate his allegations of breach of contract and retitle them as negligence.

17   Even assuming he had properly pled a contract breach, he cannot simply caption that as

18   negligence too.  Allowing a party to do so would turn every contract claim into one sounding in

19   tort.  *See Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 103 (1995) (finding "[the

20   California] legislature has not manifested an intent either to expand contract breach recovery or

21   to provide tort damages for ordinary contract breach."); *see Valenzuela v. ADT Sec. Servs.*, 820

22   F. Supp. 2d 1061, 1071 (C.D. Cal. 2010) ("[T]he mere negligent breach of a contract is

23   insufficient to give rise to tort damages."); *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp.

24   2d 1038, 1045 (E.D. Cal. 2010) (dismissing a tort claim for breach of the covenant of good faith

25   because tort claims only arose in contract where "a fiduciary or special relationship exist[ed].").

26        In any event, Plaintiff has not adequately alleged that YouTube owed him a duty of care

27   outside of the parties' contractual relationship.  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19

28   Cal. 4th 26, 58 (1998); *S. Cal. Gas Leak Cases*, 18 Cal. App. 5th 581, 587 (2017) ("Generally, a

1  defendant owes no duty to prevent purely economic loss to third parties under any negligence

2  theory."); *S. Cal. Gas*, 18 Cal. App. 5th at 588 ("Where the alleged negligence has caused

3  economic loss, but no personal injury or property damage, duty is not presumed.").  Plaintiff has

4  not alleged any physical injury or property loss—his alleged losses are purely economic.

5  Plaintiff has therefore failed to allege that YouTube owed him a legal duty of care.

6        Plaintiff has also failed to allege that YouTube breached any such duty.  Instead, Plaintiff

7  simply declares that YouTube was negligent "in handling Plaintiff's technical issues" without

8  describing how YouTube's conduct fell below any applicable standard of care.  Am. Compl. ¶

9  21; *see also* Am. Compl. ¶ 61 ("Defendant breached it [sic] duty by engaging in the conduct

10 described above.").  These conclusory allegations are not enough to state a claim for negligence.

11 *Mehr v. Féderation Internationale De Football Ass'n*, 115 F. Supp. 3d 1035, 1064 (N.D. Cal.

12 2015) (dismissing negligence claim where allegations of harm were "vague, conclusory, and

13 entirely speculative, rather than concrete and particularized.").[6]

14        **E.     The Amended Complaint Inexplicably Adds Defendants And Lumps Them
              Together**

15

16        When Plaintiff amended his original complaint, the only change he made was to add four

17 additional corporate defendants—YouTube, LLC, Google LLC, XXVI Holdings Inc., and

18 Alphabet Inc.—to the cover page.  The Amended Complaint is otherwise identical to the original

19 one he filed.  These additional defendants are never even referred to by name in the Amended

20 Complaint; instead, Plaintiff refers to the defendants collectively as "Defendant" or

21 "YOUTUBE" throughout the Complaint.  Am. Compl. ¶ 6.  Plaintiff never defines

22 "YOUTUBE," so it is unclear which entity or entities he contends contracted with Plaintiff,

23 operated the YouTube website, or is otherwise responsible for the conduct alleged.[7]

---

[6] Plaintiff asserts a claim in the Amended Complaint for "Injunctive Relief."  But under
California law, "[i]njunctive relief is a remedy, not a cause of action."  *Ivanoff v. Bank of
America, N.A.*, 9 Cal. App. 5th 719, 734 (2017).  An independent cause of action must exist for a
court to grant injunctive relief.  *Id.*  Plaintiff's standalone claim for injunctive relief cannot stand.

[7] YouTube Entertainment Studios Inc. was the only defendant named in the original complaint.
Defense counsel informed Plaintiff's counsel that that entity was improperly named and agreed
to accept service of an amended complaint substituting YouTube LLC for YouTube
Entertainment Studios, Inc.  Plaintiff did not respond to that offer.  Instead, Plaintiff added

(continued...)

1   Because the Amended Complaint does not direct any allegations at all to these legal

2   entities, the claims against them should be dismissed.  *Schuman v. State of Cal.*, 584 F.2d 868,

3   870 (9th Cir. 1978) ("Since that portion of the amended complaint based on § 1983 alleges no

4   acts on the part of the state defendants (besides the DMV employees), but merely lists their

5   names, no claim for relief is stated as to them."); *Santos v. Taylor*, No. CV 17-07260 FMO

6   (AFM), 2017 WL 5891680, at *3 (C.D. Cal. Nov. 28, 2017) (dismissing complaint because "the

7   caption of plaintiff's Complaint lists several defendants, but the [body of the] Complaint fails to

8   name any defendant"); *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-1179-BLF, 2016 WL

9   6573989, at *1 n.1 (N.D. Cal. June 29, 2016) ("In addition, though 'Countrywide Bank' is listed

10  in the caption, the Court does not consider any such entity a defendant because Plaintiffs have

11  neither named it in the body of the complaint nor served it.").

12      Relatedly, it is impermissible for Plaintiff to "lump" Defendants together to manufacture

13  claims for pleading purposes.  *See Karkanen v. California*, No. 17-cv-06967-YGR, 2018 WL

14  3820916, at *7 (N.D. Cal. Aug. 10, 2018) ("Courts consistently conclude that a complaint which

15  'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice

16  requirement of Rule 8(a)(2).'" (alterations in original) (quoting *Gen-Probe, Inc. v. Amoco Corp.*,

17  *Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996)); *Yu v. Design Learned, Inc.*, No. 15-cv-05345-LB,

18  2016 WL 1621704, at *5 (N.D. Cal. Apr. 22, 2016) ("Because he fails to differentiate among the

19  defendants . . . Mr. Yu fails to satisfy his burden."); *see also Turner Entm't Networks*, *Inc. v.*

20  *Spurlock*, No. CV 18-2490-R, 2018 WL 8755497, at *3 (C.D. Cal. June 21, 2018) ("When there

21  are multiple defendants, a plaintiff must allege with specificity how each defendant has breached

22  instead of grouping together all defendants in a single, general allegation.").  The complaint

23  against the defendants other than YouTube Entertainment Studios should be dismissed on this

24  basis as well.

25

26

27   ───────────────

28          (...continued from previous page)
     YouTube LLC and three other corporate entities, all without explanation, and did not attempt to
     properly serve these newly named defendants.

1

**F.      Plaintiff's Alleged Damages Are Barred by the Limitation of Liability Provision in the Agreement**

2

3       Even if Plaintiff had managed to state some sort of claim, any request for monetary

4   damages would be barred by the parties' Agreement.  In relevant part, it provides:

5       IN NO EVENT SHALL YOUTUBE . . . BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR

6       CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM . . . (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM

7       OUR SERVICES . . . [or] (V) ANY ERRORS OR OMISSIONS IN ANY CONTENT . . . WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR

8       ANY OTHER LEGAL THEORY[.]

9   Compl. Ex. B ¶ 10.

10       These limitations apply here where Plaintiff seeks to hold YouTube liable for ceasing to

11   distribute his videos and omitting his content from the service.  The California Court of Appeals

12   reached that precise conclusion in *Lewis v. YouTube*, 244 Cal. App. 4th 118, 124-26 (2015),

13   *review denied* (Apr. 13, 2016).  There, as here, the plaintiff sued YouTube for breach of contract

14   after YouTube removed her videos from its service.  Invoking the limitation of liability

15   provision, the Court of Appeal held her claim for damages was barred as a matter of law:

16       By claiming that YouTube wrongfully deleted her videos, the number of views of the videos, and the comments on the videos, Lewis is claiming that YouTube failed

17       to do as it should by omitting content on its Web site.  Thus, since the limitation of liability clause applied, the trial court properly sustained the demurrer without

18       leave to amend as to the second cause of action.

19   *Id*. at 126.  The *Lewis* Court went on to affirm dismissal of the case with prejudice recognizing

20   that the plaintiff could not plead around the broad liability limiting language.  *Id.* at 128.

21       This Court reached the same conclusion in *Darnaa, LLC v. Google Inc*, 236 F.Supp.3d

22   1116, 1118-19 (N.D. Cal. Feb. 21, 2017) ("*Darnaa II*").  In that case, the plaintiff asserted various

23   claims arising from YouTube's removal, and failure to restore, plaintiff's music video.  The Court

24   held that the limitation of liability clause in Section 10 of the Agreement barred any claim for

25   damages arising from YouTube's actions.  *Id.* at 1123-26 (dismissing plaintiff's only remaining

26   claim for breach of the implied covenant based on liability limitation).[8]

27

28   [8]  The liability limitation at issue here is not limited to claims sounding in contract.  It expressly bars damages for tort claims as well.  *See* Compl. Ex. B ¶ 10 (applicable to claims sounding in "warranty, contract, tort, or any other legal theory"); *see also Darnaa, LLC v. Google, Inc.*, No.

(continued...)

1    **III.    PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 OF THE CDA**

2              The language of the parties' Agreement and Plaintiff's pleading failures afford the Court

3    ample grounds upon which to dismiss this action with prejudice.  The Court thus need not

4    address YouTube's federal statutory immunity for claims challenging its decisions to host or

5    remove third party content from its online service. That immunity however, found in section

6    230(c) of the CDA, 47 U.S.C. § 230(c), also bars Plaintiffs claims based on removal of

7    Plaintiff's videos.

8              As the Ninth Circuit has explained, with respect to interactive computer services, "any

9    activity that can be boiled down to deciding whether to exclude material that third parties seek to

10   post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley*

11   *v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).[9]  Put differently, the

12   CDA "shields from liability all publication decisions, whether to edit, to remove, or to post, with

13   respect to content generated entirely by third parties."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,

14   1105 (9th Cir. 2009); *see also Sikhs for Justice "SFJ", Inc. v. Facebook Inc.*, 144 F.Supp.3d

15   1088, 1093-96 (N.D. Cal. 2015) (applying Section 230(c)(1) to dismiss claims against Facebook

16   for removing user's page), *aff'd*, 697 F.App'x 526 (9th Cir. 2017); *Batzel v. Smith*,  333 F.3d

17   1018, 1031 n.18 (9th Cir. 2003) (lawsuits seeking to hold a service provider liable for its

18   "exercise of a publisher's traditional editorial functions—such as deciding whether to publish,

19   withdraw, postpone or alter content"—are barred.); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330

20   (4th Cir. 1997) (same).

21   _____

22            (...continued from previous page)
     15-cv-03221-RMW, 2015 WL 7753406, at *5 (N.D. Cal. Dec. 2, 2015) ("*Darnaa I*") (dismissing

23   negligent interference with prospective economic advantage claim based on Section 10 of the
     Agreement).

24

25   [9] There can be no dispute that YouTube qualifies as an "interactive computer service" under the
     CDA.  *See*  47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information

26   service, system, or access software provider that provides or enables computer access by
     multiple users to a computer server"); *Lancaster v. Alphabet Inc.*, No. 15-cv-05299 HSG, 2016

27   WL 3648608, at *2 (N.D. Cal. July 8, 2016) (applying the CDA to YouTube as an "interactive
     computer service"); *Gavra v. Google Inc.*, No. 5:12-CV-06547 PSG, 2013 WL 3788241, at *2-4

28   (N.D. Cal. July 17, 2013) (holding that the CDA immunized Google from liability arising from
     allegedly defamatory videos posted to YouTube).

The CDA provides a "robust immunity." *Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924 JF (HRL), 2011 WL 3740813, at *2 (N.D. Cal. Aug. 23, 2011).  It is to be applied at the earliest stages of a case.  *SFJ*, 144 F. Supp. 3d at 1096 (dismissing claims with prejudice because Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles" (quoting *Roommates*, 521 F.3d at 1175)).  And it squarely applies here.

YouTube's decisions regarding whether to distribute and/or display Plaintiff's videos and host his channels are clear examples of the kind of "editorial and self-regulatory functions" that section 230(c)(1) protects.  *See Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("[T]he very essence of publishing is making the decision whether to print or retract a given piece of content.").  Numerous cases in this district have applied Section 230(c)(1) to bar claims that seek to impose liability on online services for similar editorial decisions.  *See, e.g, Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *3-5 (N.D. Cal. May 9, 2019) (applying Section 230(c)(1) to dismiss claims against Facebook for removing a user's posts because Facebook's "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct"); *Lancaster*, 2016 WL 3648608 at *2-3 (holding that the CDA protected YouTube from liability for deciding to remove a user's videos); *SFJ*, 144 F.Supp.3d at 1093-96 (applying Section 230(c)(1) to dismiss claims against Facebook for removing user's page); *Levitt v. Yelp! Inc.*, No. 10-1321 EMC, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011) ("editorial decisions such as whether to publish or de-publish a particular review" are publisher functions covered by 230(c)(1)'s immunity), *aff'd*, 765 F.3d 1123 (9th Cir. 2014).

Simply put, Plaintiff wants to hold YouTube liable for its determinations regarding which videos and channels should be displayed on and through its service.  That is a paradigmatic example of a publisher decision, claims over which the Ninth Circuit has "insisted" are barred by the CDA.  *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71); *see also, e.g.*, *Ben Ezra*, 206 F.3d at 986 ("By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect.").

1   Plaintiff's efforts to attack YouTube's editorial decision making thus fail as a matter of law.

2   Any claims directed to that decision making should be dismissed with prejudice.  *See Lancaster*,

3   2016 WL 3648608, at *3 ("Any amendment would be futile, and thus the Court dismisses such

4   claims with prejudice.").

5                                          **CONCLUSION**

6          For these foregoing reasons, YouTube respectfully requests that the Court dismiss

7   Plaintiff's Amended Complaint with prejudice.

8

9   Dated:  February 6, 2020                    WILSON SONSINI GOODRICH & ROSATI
                                                 Professional Corporation
10

11

12                                               By:  /s/ David H. Kramer
                                                      David H. Kramer
13
                                                 Attorneys for Defendant *YouTube Entertainment*
14                                               *Studios Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28