UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERIK MISHIYEV,

    Plaintiff,

v.

ALPHABET, INC.; XXVI HOLDINGS, INC.; GOOGLE, LLC; YOUTUBE, LLC; YOUTUBE ENTERTAINMENT STUDIOS, INC.; and DOES 1 through 10, inclusive,

    Defendants.

No. C 19-05422 WHA

**ORDER DISMISSING ACTION**

## INTRODUCTION

In this action arising out of defendants' allegedly wrongful removal of plaintiff's videos from defendants' video-sharing website, defendants move to dismiss. Because the parties' agreement expressly authorized the allegedly wrongful conduct, as well as for other reasons stated below, the motion is **GRANTED**.

## STATEMENT

Defendant YouTube, LLC, operated a popular video-sharing website of the same name through which users could post and view video content. YouTube allowed users to upload or view videos for free, in exchange for a nonexclusive license to host users' videos. Certain users could make money from their videos through YouTube's AdSense program: YouTube would display advertising in connection with a video and share advertising revenue with the

user who uploaded it. As viewers, users could subscribe to another user's channel to keep up to date with new videos (First Amd. Compl. ("Compl.") ¶¶ 9–12).

Starting in 2007, Plaintiff Erik Mishiyev operated two such channels, uploading videos of "original music, DJ mixes, and celebrity interviews." Users viewed plaintiff's videos over 110 million times and over 250,000 users subscribed to his two channels. Through participation in the AdSense program, plaintiff purportedly earned over $300,000 between 2012 and 2018, his primary source of income. In 2019, however, YouTube terminated plaintiff's account and removed all of his videos. YouTube explained that it terminated plaintiff's account due to repeated copyright violations. The complaint, however, alleges that YouTube "did not simply remove [plaintiff's] content because of copyright claims, but instead in retaliation for placing [YouTube] on notice that [plaintiff] was filing a lawsuit against them." Notably missing from the complaint are any allegations that plaintiff's videos did not infringe others' copyrights (Compl. ¶ 11, 31).

At bottom, this action is about YouTube's decision to terminate plaintiff's account and disable the channels associated with it. YouTube's "Terms of Service" agreement governed the terminated relationship. The agreement vested YouTube with significant control over the operation of its service, including the ability to remove uploaded content (Compl. Exh. B).

Section 6.G, in part, disallowed infringing material and gave YouTube the power to remove content that infringed upon another's intellectual property rights:

> YouTube does not permit copyright infringing activities and infringement of intellectual property rights on the Service, and YouTube will remove all Content if properly notified that such Content infringes on another's intellectual property rights. YouTube reserves the right to remove Content without prior notice.

Section 7 of the agreement provided YouTube's account termination policy:

> A. YouTube will terminate a user's access to the Service if, under appropriate circumstances, the user is determined to be a repeat infringer.
>
> B. YouTube reserves the right to decide whether Content violates these Terms of Service for reasons other than copyright infringement, such as, but not limited to, pornography, obscenity, or excessive length. YouTube may at any time, without prior notice and in its sole discretion,

2

> remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service.

Section 8 provided a procedure for copyright owners to notify YouTube if the owner believed a user's video infringed upon the owner's copyrights. If the copyright owner dutifully complied with the notification requirements, YouTube would remove the allegedly infringing content pursuant to Section 6.G. Section 8 also allowed users to rebut the notice by submitting a "counter-notice." Section 8.B provided (emphasis added):

> If a counter-notice is received by the Copyright Agent, YouTube *may* send a copy of the counter-notice to the original complaining party informing that person that it *may* replace the removed Content or cease disabling it in 10 business days. Unless the copyright owner files an action seeking a court order against the Content provider, member or user, the removed Content *may* be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, *at YouTube's sole discretion.*

Beginning in March 2016, plaintiff began receiving copyright claims on his most profitable videos. If plaintiff failed to respond, these claims would leave strikes on plaintiff's channels. Tally three strikes and YouTube would terminate plaintiff's channel. For the time being, plaintiff succeeded in rebutting the claims and restoring his videos (Compl. ¶ 15).

By 2017, over 100,000 people allegedly subscribed to plaintiff's channels. With access to plaintiff's channels and videos restored, that number continued to increase. Nevertheless, the views on each video plaintiff posted remained low when compared to similar channels with fewer subscribers (Compl. ¶¶ 17, 18).

At this point, plaintiff became suspicious of YouTube for failing to distribute his videos to his subscribers. To confirm whether YouTube distributed his videos, plaintiff demanded that YouTube customer service provide plaintiff with a list of subscribers that clicked on or watched his videos. The support team explained they could not provide such information (Compl. ¶ 18, Exh. E).

Eventually, according to the complaint, plaintiff lost faith in YouTube's customer service representatives and threatened litigation several times. The complaint points to an appended exhibit containing one such conversation, apparently to support the allegation that plaintiff threatened litigation. During the conversation, plaintiff berated a support representative and

3

explained that plaintiff would "expose" YouTube's "corruption." Plaintiff made no mention of a lawsuit (Compl. ¶¶ 18–21, Exh. G).

The complaint alleges that on December 14, 2018, YouTube sent plaintiff a notice that YouTube would be terminating his account and removing his videos due to plaintiff's "litigation threat." In connection with this allegation, the complaint appended a May 2019 email from YouTube, rather than the December email. According to the May 2019 email plaintiff decided to append, the December 14 email "outlined the actions [YouTube was] taking to address [plaintiff's] threats made to YouTube employees." Those actions included "termination of [plaintiff's] YouTube Content Licensing Agreement and all channel monetization, and revoking [plaintiff's] access to creator support channels and YouTube Spaces indefinitely" (Compl. Exh. H).

In the month following the December 14 notice, the complaint alleges that plaintiff "became bombarded with copyright claims like he never had been before[.]" On January 22, YouTube allegedly acted upon the copyright claims and blocked all public access to plaintiff's videos. Over the next month, plaintiff submitted several counter-notices. In an April email appended to the complaint, YouTube explained that certain videos remained ineligible for counter-notice because YouTube had already reviewed and rejected previous counter-notices associated with those videos (Compl. ¶¶ 23–28, Exh. N).

According to the complaint, when plaintiff inquired further, YouTube retracted its statement that the videos had been ineligible for counter-notice and agreed to process the pending counter-notices. In support, the complaint appends a screenshot of an email YouTube allegedly sent. This order pauses to note that although the complaint suggests YouTube retracted its statement as to the *January 2019* counter-notices, the email appears to predate those counter-notices. The email is dated September 24, but no year is included. We can rule out September 2019, however, because plaintiff filed the original complaint with these allegations and exhibits in August 2019. Thus, YouTube sent the email no later than September 2018, months prior to submitting the January 2019 counter-notices (Compl. ¶¶ 28–29, Exh. O).

4

In any event, the May 2019 email explained that YouTube disabled plaintiff's channel because the channel received more than three copyright strikes and that the information plaintiff provided in response to the copyright claims failed to show that plaintiff had the necessary rights to post the content on YouTube. As such, the copyright strikes were "not eligible" to be resolved. Based on that determination, YouTube explained that any new counter-notices plaintiff submitted would be rejected automatically (Compl. Exh. H).

As discussed, the complaint alleges that YouTube actually removed the videos "in retaliation for placing [YouTube] on notice that [plaintiff was] filing a lawsuit against [YouTube.]" As a result of YouTube's decision to terminate his account, plaintiff lost "new subscribers, views, future hits, performance bookings, and lost advertising and sponsorship revenue" (Compl. ¶¶ 31–34).

Plaintiff filed this action in August 2019 in our San Jose division. Plaintiff alleged six claims, including: (1) breach of contract, (2) intentional interference with prospective business advantage, (3) interference with contractual relations, (4) negligence, (5) negligent interference with prospective economic relations, and (6) injunctive relief.

In October 2019, before an order reassigned the action to the undersigned, Judge Davila allowed plaintiff's counsel to withdraw without substitution of new counsel (Dkt. No. 11). The action stalled while plaintiff sought new counsel. In December 2019, plaintiff's current counsel substituted in (Dkt. No. 19).

Defendants now move to dismiss under Rule 12(b)(6). This order follows full briefing and a hearing.

**ANALYSIS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court must take all of the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Ibid.*

### 1. BREACH OF CONTRACT.

The complaint alleges that YouTube breached the parties' agreement by declining to restore plaintiff's videos after YouTube removed them based on allegations of copyright infringement. The agreement, however, authorized YouTube to do exactly that. "And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992).

Section 6.G provided that "YouTube [did] not permit copyright infringing activities and infringement of intellectual property rights on the Service, and YouTube [would] remove all Content if properly notified that such Content infringes on another's intellectual property rights." Section 8.B provided an opportunity for users to rebut such a notice if they believed the videos did not infringe the allegedly protected material. Importantly, however, once a user submitted a counter-notice, the agreement reserved to YouTube's sole discretion the decision to take any further action, including whether to restore the videos or even to send the counter-notice to the purported copyright owner. Thus, YouTube did not agree to act as a neutral processor of notices and counter-notices. YouTube retained control to evaluate counter-notices and infringement on its own.

The complaint omits any discussion of whether plaintiff maintained the necessary rights to the materials in his videos. Instead, the complaint claims that YouTube had a separate, wrongful purpose for removing the videos: Retaliation against plaintiff's litigation threats. Even taking the retaliation allegations as true, however, the complaint fails to overcome YouTube's express right to terminate plaintiff's account for repeat copyright infringement. *See Carma*, 2 Cal.4th at 374.

In his opposition brief, plaintiff relies on *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57–61 (2002), for the proposition that the discretion the agreement reserved to YouTube remained limited by the duty of good faith. *Storek*, however, held that

the covenant of good faith and fair dealing could not be implied so as to prohibit the defendant from doing what it remained expressly permitted to do under the parties' agreement. The defendant "had no duty to act in good faith when making its [discretionary determination]; it was required only to make an objectively reasonable determination."

Here, YouTube allowed plaintiff to post videos on its platform free of charge in exchange for a license to its content. Videos infringing intellectual property rights were verboten and YouTube determined that plaintiff did not have the necessary rights to use the content in his videos. Plaintiff does not dispute that determination. According to the only decision plaintiff relies on, our inquiry is over.

Because the agreement unambiguously forecloses plaintiff's contract claim, granting leave to amend would be futile. The breach of contract claim is **DISMISSED WITH PREJUDICE**.

The complaint also alleges that YouTube breached the agreement by failing to resolve continual technical difficulties that prevented the distribution of plaintiff's new content. That failure allegedly breached Section 6.F, which provides "YouTube will process any audio or audiovisual content uploaded by you to the Service in accordance with the YouTube Data Processing Terms . . . except in cases where you uploaded such content for personal purposes or household activities." The data processing terms, however, include no promise to distribute plaintiff's videos in any specific manner. Even if the data processing terms were applicable, plaintiff's claims are based on YouTube's decision to remove plaintiff's videos. Plaintiff does not and cannot allege that the purported technical difficulties caused the removal of the videos without severely contradicting the remaining allegations and the many exhibits appended to the complaint. So, amendment to patch up this theory would be futile (Compl. ¶ 19, Exh. B).

**2.   THE NEGLIGENCE CLAIMS.**

The complaint fails to set forth a duty that can support plaintiff's negligence claims. The complaint alleges that YouTube "owed a duty to Plaintiff to exercise reasonable care to prevent causing harm to Plaintiff" and that YouTube "breached it [sic] duty be engaging in the conduct described" in the complaint (Compl. ¶¶ 60, 61). In California, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract

arising from principles of tort law." *Erlich v. Menezes*, 21 Cal.4th 543, 551 (1999). Plaintiff does not plead the existence of any duty independent of YouTube's contractual obligations.

In his opposition brief, plaintiff argues that his negligence claim and negligent interference with economic relations claim are both supported by YouTube's implied duty to perform its contractual duties competently, relying for support on *Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014). *Holguin* recognized the "well-settled principle that express contractual terms give rise to implied duties, violations of which may themselves constitute *breaches of contract*." *Ibid.* (emphasis added). Although the duties are implied, they remain contractual duties, not duties "independent of the contract arising from principles of tort law." *Erlich*, 21 Cal. 4th at 551. The negligence claims fail.

Plaintiff amended his complaint once and proposes another amended complaint appended to his opposition brief. Neither amended complaint deviates substantively from the original complaint. The opposition brief also fails to explain what changes could be made to the current allegations to fix the deficiencies discussed. The negligence claims are **DISMISSED WITH PREJUDICE**.

3. **TORTIOUS INTERFERENCE CLAIMS AND INJUNCTIVE RELIEF.**

To state a claim for intentional interference with contractual relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages." *PG&E v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

Plaintiff fails to identify any contract between himself and a third party. The complaint alleges that plaintiff "had many subscribers which as a result thereof, the Plaintiff was making money from said subscribers" and that YouTube "interfered with Plaintiff's contractual relationships with said subscribers by doing all of the acts and omissions alleged" in the complaint (Compl. ¶44). To the extent the complaint alleges that a contractual relationship arose between plaintiff and his subscribers based on the advertisement revenue the subscribers generated and YouTube shared with plaintiff, this is a legal conclusion we need not accept as

true. *Twombly*, 550 U.S. at 555. The money plaintiff earned "from" his subscribers came from YouTube pursuant to YouTube's agreement with plaintiff.

The opposition brief fares no better. Plaintiff argues that had YouTube not removed his videos, plaintiff may have gained "new subscribers, views, future hits, performance bookings, and lost advertising and sponsorship revenue" (Compl. ¶ 34; Opp. At 7). To the extent these economic benefits are distinct from those provided by the parties' agreement, they amount only to speculation.

Plaintiff's claim for interference with prospective economic advantage similarly fails because the tort requires, in part, a specific economic relationship between plaintiff and a third party. *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–522 (1996). Plaintiff specifies no such relationship.

Finally, plaintiff's claim for injunctive relief is misguided. "Injunctive relief is a remedy, not a cause of action." *Ivanoff v. Bank of America, N.A.*, 9 Cal. App. 5th 719, 734 (2017). California does not recognize a standalone claim for injunctive relief. Because none of plaintiff's claims for relief survive, his claim for injunctive relief fails too.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is **GRANTED**. Amendment would be futile. The action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 13, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE